FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 SEP -4 P 3: 56
SEP 0 4 2001
LORETTA G. WHYTE
CLERK

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

JOANNE DIERKER, WIFE OF/AND
FERDINAND M. DIERKER,
CHRISTOPHER DIERKER AND
SEAN DIERKER,

                Plaintiffs,

vs.

R.J. REYNOLDS TOBACCO
COMPANY, ET AL.,

                Defendants.

CIVIL ACTION
NO. 00261

SECTION: "K"

MAGISTRATE: 5

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM
## IN OPPOSITION TO MOTION TO REMAND

NOW INTO COURT, through undersigned counsel, come defendants, Philip Morris Incorporated, Brown & Williamson Tobacco Corporation and R.J. Reynolds Tobacco Company, with full reservation of any and all defenses and objections, including lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service of process.

### I.   INTRODUCTION

On May 4, 2001, this Court granted defendants an opportunity to conduct limited discovery on the issue of fraudulent joinder and for the parties to supplement their briefs on the remand issue. Defendants hereby incorporate by reference their previous opposition to remand brief, and arguments therein, filed on March 6, 2000, and submit this supplemental memorandum in opposition to Plaintiffs' August 15, 2001 Supplemental Memorandum in Support of Motion to Remand ("Supplemental

Fee _____
Process _____
X Dktd _____
CtRmDep _____
Doc.No. _____

Memorandum"). Defendants' briefs demonstrate that this Court has diversity jurisdiction because affirmative defenses of prescription, statutory bar, and preemption foreclose any potential causes of action against the Louisiana Defendants.

## II. ARGUMENT

**A.** **Plaintiffs' Redhibition Claims Do Not Require Tort-Based "Damages" Or "Injury" For Prescription to Commence.**

Plaintiffs argue in their Supplemental Memorandum that prescription does not commence on a redhibition claim until the plaintiff has both knowledge of the "tortious act" and the "damage" caused. Plaintiffs further contend that Joanne Dierker did not discover her redhibition "damage" until her lung cancer diagnosis in January, 1999. Consequently, Plaintiffs argue, their action was timely filed on January 4, 2000. Plaintiffs' interpretation of both the redhibition claim and its prescriptive period, however, are erroneous.

Contrary to Plaintiffs' contention, a redhibition claim under Louisiana law is not tort-based, and as such does not require damage, let alone its discovery, to state a claim. The redhibition statute provides only for recission of the sale or recovery of the purchase price, and that remedy is available simply because a defect exists, not because the defect caused any damages:

> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives the buyer the right to obtain recission of the sale.

La. Civ. Code art. 2520 (emphasis added); see also art. 2545. Article 2520 makes no mention of damages, injury, or, for that matter, seller conduct. Because redhibition claims are statutory in nature, they are not based upon tortious conduct. Plaintiffs who

are injured or otherwise damaged by a defective product have other, exclusive means of recovery under the Louisiana Products Liability Act.

Under the Code, it is delivery of the product and/or the plaintiff's <u>knowledge of the defect</u> that commences prescription:

> The action for redhibition against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day delivery of such thing was made to the buyer or one year from the day the defect was discovered by the buyer, whichever occurs first.

La. Civ. Code art. 2534(A)(1). Neither damages nor injury are relevant to prescription of a redhibition claim.

Plaintiffs ignore the Louisiana Civil Code entirely and rely instead upon <u>Encalade v. Coast Quality Constr. Corp.</u>, 772 So.2d 244 (La. App. 5th Cir. 2000). But neither <u>Encalade</u>, nor <u>Beth Israel v. Bartley</u>, 579 So.2d 1066 (La. App. 4th Cir. 1991), also cited by Plaintiffs, can re-write the express provisions of the Code. Neither case involved consumer product defects like those alleged in this case; both involved construction defects, and both involved contract claims. <u>See</u> <u>Encalade</u>, 772 So.2d at 245-46; <u>Beth Isreal</u>, 579 So.2d 1070. Moreover, despite its passing reference to "tortious conduct" and "damages," the <u>Encalade</u> court <u>did not</u>, as Plaintiffs suggest, "dictate" that prescription does not begin to run until tort damages are sustained. On the contrary, the <u>Encalade</u> court specifically recognized that "[p]rescription does not commence in such cases until the purchaser <u>discovers the defect</u>," <u>Encalade</u>, 579 So.2d at 247 (emphasis added), and decided the case accordingly.[1]

The <u>Beth Israel</u> quotation cited by Plaintiffs as "black letter law" actually originates in a tort case,[2] and is not sufficient to override the express language of the

---

[1].    Neither of the two courts listed applied the language cited in the way Plaintiffs suggest this court must (to require damages as an element of a redhibition claim).

[2].    <u>See</u> <u>Beth Israel</u>, 579 So.2d at 1072, citing <u>Reed v. General Motors Corporation</u>, 400 So.2d 919 (La. App. 1st Cir. 1981), which in turn cites <u>Cartwright v. Chrysler Corporation</u>, 232 So.2d 285 (La.

Louisiana Civil Code. Articles 2520 and 2534 are the <u>true</u> "black letter law" as to prescription of Plaintiffs' redhibition claims, and damages are not required to give rise to a claim for redhibition or to trigger its prescriptive period.

**B.    <u>There Are No "Disputed Issues of Fact" Regarding the Alleged Redhibitory Defect</u>.**

Plaintiffs also argue that prescription of their redhibition claims is a "fact based inquiry" that can only be resolved by a jury. Plaintiffs suggest that the jury must determine "what is the defect" and argue that a jury will be required to address whether the defendants "fraudulently concealed their manipulation of nicotine in cigarettes" in order to determine whether Plaintiffs' claims have prescribed. Supplemental Memorandum at 3. Plaintiffs are wrong on both points.

**1.    The alleged redhibitory defect is expressly defined by Plaintiffs in their own Petition.**

Contrary to Plaintiffs' assertion, no jury is required to "resolve what the actual defect is in this case." Supplemental Memorandum at 3. Plaintiffs themselves have defined the alleged redhibitory defect in their Eleventh Claim for Relief at Pet. ¶165:

> The Defendants' concealment of nicotine's addictive nature, the Tobacco Companies' manipulation of nicotine levels in their cigarettes, and the Tobacco Companies' concealed intent to addict or maintain the addiction of the Plaintiffs and Class members <u>constitutes a redhibitory vice or defect</u> in the Defendants' cigarettes . . . .

<u>Id.</u> (emphasis added). In their Supplemental Memorandum, Plaintiffs attempt to assert that now, in addition to "the addictive nature of the cigarette," the alleged redhibitory defect is also "the toxicity of the cigarette."

---

1970). <u>Cartwright</u>, a Louisiana Supreme Court decision, involved a pure negligence claim against an auto manufacturer brought by a plaintiff injured in an accident involving another driver's car that was manufactured by the defendant. In fact, the language now used by Plaintiffs as a basis for their "black letter law" argument actually arises from a quotation in <u>Cartwright</u> from the Civil Code articles setting forth the prescription period of tort claims.

Obviously, a redhibitory defect <u>expressly defined</u> in the Petition cannot be transformed into something else entirely by simply incorporating allegations when it suits the Plaintiffs' purposes. If Plaintiffs had intended to define their redhibitory defect to include the toxicity of cigarettes, they certainly could have done so at the time the Petition was prepared. Defendants contend that prescription would still bar Plaintiffs' claims for redhibition, but Plaintiffs must obviously not be permitted to shift the target in this manner. When the plaintiffs in <u>Virginia Scott</u> attempted to re-define their redhibitory defect in the same manner being attempted here (in order to avoid prescription of claims against in-state cigarette distributors), the Court properly rejected plaintiffs' attempt to "add another alleged redhibitory defect." <u>See Virginia Scott, et al. v. R.J. Reynolds, et al.</u>, No. 99-3091 (E.D. La. July 12, 2001) ("<u>Virginia Scott</u> Order")(attached as Exhibit A) at 7 ("The plaintiffs may not shift target in this manner."). Plaintiffs distancing of themselves from their own express definition is a transparent attempt to avoid being bound, for purposes of this Court's jurisdictional inquiry, by their own pleadings. To allow Plaintiffs this leeway would also prejudice Defendants, who reasonably relied on Plaintiffs' express redhibitory defect definition in conducting the limited discovery necessary to establish their affirmative defense of prescription.

2.    **Defendants' alleged fraudulent concealment of nicotine manipulation is wholly irrelevant to Plaintiffs' redhibition claim.**

Plaintiffs also suggest that "whether defendants fraudulently concealed their manipulation of nicotine in cigarettes" is a factual inquiry that must be decided by a jury before a determination as to prescription of Plaintiffs' redhibition claims can be made.[3]

---

[3].    Strangely, Plaintiffs also appear to suggest in their Supplemental Memorandum that they have a fraud claim under redhibition law. Supplemental Memorandum at 6. This is apparently yet another attempt to make their simple redhibition claim more than it actually is. First, if Plaintiffs did possess some other claim under redhibition law, it, like their traditional redhibition claims, would have already prescribed. <u>See</u> discussion at section D, <u>infra</u>. Second, Plaintiffs' January 3, 2000 Petition mentions no such redhibition-based fraud claim. Third, Plaintiffs have already pled a cause of action for "Fraud and Deceit," which would presumably encompass any fraudulent

Defendants expressly deny any allegation of fraudulent concealment, but the argument is without basis regardless. A redhibition claim is based solely on the <u>existence of a defect</u>, and does not require evidence of conduct (culpability) on the part of the seller to commence prescription.

**C.     <u>Fifth Circuit Precedent Requires That Affirmative Defenses Barring Plaintiffs' Claims Against The Louisiana Defendants Be Considered In This Court's Fraudulent Joinder Analysis.</u>**

Plaintiffs argue that this Court should remand this case like the courts in <u>Cooper v. Brown & Williamson Tobacco Corp. et al.,</u> and <u>Denise Murphy v. R.J. Reynolds Tobacco et al.</u> (attached as exhibits "A" and "B" to Plaintiffs' Supplemental Memorandum). But neither of those courts recognized that under applicable Fifth Circuit precedent, when federal diversity jurisdiction is alleged to exist pursuant to the fraudulent joinder doctrine, the court must consider two factors: (1) has the plaintiff stated a legitimate cause of action; and (2) if there is a legitimate cause of action, are there any affirmative defenses that would bar the cause of action. <u>See</u> <u>Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.,</u> 99 F.3d 746, 753 (5th Cir. 1996).[4]

This Court, along with numerous others with currently pending smoking and health cases, appropriately acknowledged Defendants' right, in opposing remand, to assert affirmative defenses potentially barring Plaintiffs' claims against in-state

---

concealment Plaintiffs might claim. <u>See</u> Pet. at ¶39-69. Finally, in previous remand briefing Plaintiffs have never identified their Fraud and Deceit claim as one of the two they claim to be validly asserted against the Louisiana Defendants.

[4]. In <u>Cooper v. Brown & Williamson Tobacco Corp. et al.,</u> Judge Berrigan not only did not allow the defendants the right to conduct limited discovery on remand, she never even allowed them the opportunity to brief their right to such discovery. In <u>Denise Murphy v. R.J. Reynolds Tobacco et al.,</u> although some routine written discovery had taken place prior to the court's remand decision, it had proved insufficient to allow defendants to establish their affirmative defenses, and Judge Fallon did not allow additional limited discovery for that purpose. Because in both <u>Cooper</u> and <u>Murphy,</u> unlike this case, discovery had been either disallowed or severely limited in both, neither of those courts had the benefit of knowing, as this Court now does based upon the limited discovery conducted, that the plaintiffs' claims against the in-state defendants <u>were</u> barred by affirmative defenses under existing facts. <u>See</u> discussion at section D, <u>infra</u>.

defendants, and permitted limited discovery before remand briefing is concluded. Indeed, one district court in this district has <u>already denied remand</u> in a smoking and health case nearly identical to this one after conducting the <u>Sid Richardson</u> second-step analysis of affirmative defenses.  <u>See Virginia Scott</u> Order, Ex. A.  In <u>Virginia Scott,</u> Judge Clement concluded that federal jurisdiction was proper because the <u>Virginia Scott</u> plaintiffs' claims against the <u>same in-state cigarette distributors sued in this case</u> were prescribed, and that the plaintiffs therefore had no possibility of recovery against the distributors.  <u>See Virginia Scott</u> Order, Ex. A, at 11-12.

By letter dated August 30, 2001, Plaintiffs notified this Court of the remand of another smoking and health case pending in the western district, <u>Samuel Newsom v. R.J. Reynold Tobacco Co.</u>  In <u>Newsom,</u> the court had allowed defendants only restricted discovery to establish prescription.  Unlike this case, Judge Doherty did not permit defendants to conduct any depositions or collect any records, and defendants were forced to rely solely upon plaintiffs' petition and responses to a brief set of interrogatories.  Those responses proved inadequate to allow defendants to establish the affirmative defense of prescription. In this case, even the limited discovery permitted under <u>Sid Richardson</u> proves that Plaintiffs' claims have prescribed.

**D.    <u>Because Plaintiffs' Claims Against the Louisiana Defendants Are Barred By Defendants' Affirmative Defenses of Prescription, Statutory Bar, and Preemption, Those Defendants Are Fraudulently Joined, and Federal Jurisdiction Exists.</u>**

Plaintiffs' remand pleadings claim that their Petition asserts two viable state law claims against the Louisiana Defendants: (1) a redhibition claim; and (2) negligent sale of

cigarettes to Joanne Dierker when she was a minor.[5] Pl. Mem. Supp. Mot. Remand at 12-13. Defendants' affirmative defenses, however, absolutely bar the claims against the Louisiana Defendants in this matter. First, the Plaintiffs' own Petition and deposition testimony prove that the redhibition and negligence claims against the Louisiana Defendants have prescribed. Second, Plaintiffs' redhibition claims are barred for absence of warranty by La. Civ. Code art. 2521. Third, the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §1331-1340 expressly preempts Plaintiffs' redhibition claims against the Louisiana Defendants.

### 1. Plaintiffs' claims against the Louisiana Defendants are prescribed.

Civil Code Article 2534 governs the prescription periods for redhibition claims. The Louisiana legislature amended Article 2534 in 1993, with changes effective January 1, 1995. In so doing, the legislature provided that "the provisions of this Act shall have prospective application only, and shall not affect any sales transaction executed before January 1, 1995, which sales transactions shall be governed by the law in effect prior thereto." Id. at §4. Although all of Plaintiffs' claims against the Louisiana Defendants are prescribed, their pre- and post-1995 claims are, as a result of the article's amendment, governed by different prescriptive periods under the Code.

---

[5] Plaintiffs' motion to remand does not cite breach of implied warranty as a claim asserted against the Louisiana Defendants. To the extent Plaintiffs would attempt to assert implied warranty claims against the Louisiana Defendants, those claims would be prescribed for the reasons cited herein, as redhibition and implied warranty claims are so intertwined that courts treat them as essentially synonymous. Sometimes courts speak of a redhibition claim, sometimes courts speak of an implied warranty of fitness for ordinary use claim, and sometimes courts speak of an implied warranty of freedom from redhibitory defects. See, e.g., Hob's Refrigeration and Air Conditioning, Inc. v. Poche, 304 So.2d 326, 237 (La. 1974). Whatever the label, the seller is simply bound to offer a product that is reasonably fit for the intended, ordinary use. La. Civ. Code art. 2520; La. Civ. Code art. 2524. As to all of the arguments relevant to the motion to remand, this is a distinction without difference. A breach of implied warranty claim has all of the requirements of a redhibition claim that are discussed above, and both claims against the Louisiana Defendants fail for the same reasons.

### a.    Plaintiffs' pre-1995 redhibition claims are prescribed.

Plaintiffs filed their Petition on January 4, 2000.  Plaintiffs' redhibition claims based on Joanne Dierker's alleged purchase of cigarettes prior to January 1, 1995 are, as a threshold matter, barred by La. Civ. Code art. 2534 (1870).  For pre-1995 sales transactions, prior Article 2534 provided that a "redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale."  See La. Civ. Code art. 2534 (1870)(emphasis added). Because redhibition claims prescribe a year after the sale of the allegedly defective product, any redhibition claims Ms. Dierker may have possessed for her pre-1995 purchase of cigarettes prescribed a year after each sale.  Accordingly, as of January 1, 1996, over four years before the filing of this lawsuit, all of Plaintiffs' claims based upon Ms. Dierker's pre-1995 cigarette purchases had prescribed.

### b.    Plaintiffs' post-1995 redhibition claims are prescribed.

Claims based on Ms. Dierker's purchase of cigarettes after January 1, 1995 are also prescribed.  Pursuant to Article 2534, redhibition claims prescribe four years after the delivery to the buyer or one year after the buyer discovers, or should have discovered, the allegedly hidden defect, whichever occurs first. La. Civ. Code art. 2534.  The rule in Louisiana pertaining to "discovery" has long been that prescription begins to run when a plaintiff has actual or constructive notice of his cause of action.  See Ayo v. Johns-Manville Sales Corp., 771 F.2d 902, 907 (5th Cir. 1985).  Thus, prescription of redhibition claims begin to run "from the time there is sufficient notice as to call for inquiry about a claim, not from the time when the inquiry reveals facts or evidence sufficient to prove the claim." David v. Meek, 710 So. 2d 1160, 1163 (La. Ct. App. 1998)(emphasis added). See also Anderson v. Beauregard Memorial Hosp., 709 So. 2d 283, 284 (La. Ct. App. 1998).

In this case, even the limited discovery conducted to date makes clear that Ms. Dierker had <u>actual</u> knowledge more than a year prior to the filing of her original Petition that cigarettes contained the alleged redhibitory defect for which Plaintiffs now seek to recover, i.e. that they were addictive.[6] Plaintiff Ferdinand Dierker's deposition testimony and Plaintiffs' Petition provide all the information necessary to find that the claims against the Louisiana Defendants are prescribed. Ferdinand Dierker's testimony confirms that Joanne Dierker knew for years prior to the filing of this lawsuit that she was addicted to cigarettes:

> Q:  And what I'm trying to do is to figure out, Mr. Dierker, that was about 1990 when you remember her first – you first telling her to cut back and she told you that she was trying but she was addicted to cigarettes?
>
> A:  Yes, ma'am. Roughly in that range.

F. Dierker Dep. Tr., Ex. B, at 42:5-11; <u>see also</u> <u>id.</u> at 43:3-20. Mr. Dierker's testimony also establishes that he believed his wife to have been addicted to cigarettes since they were married in 1970. <u>See</u> <u>id.</u> at 39:6-16; <u>see also,</u> <u>id.</u> at 37:5-12.

Ms. Dierker not only acknowledged her addiction to cigarettes, she also acted on this knowledge. Mr. Dierker testified that his wife had used nicotine replacement therapy in the form of a nicotine patch to try to stop smoking:

---

[6].  Although Plaintiffs characterize the alleged redhibitory defect as [1] nicotine's addictive nature, [2] the Tobacco Companies' manipulation of nicotine levels in their cigarettes, and [3] the Tobacco Companies' concealed intent to addict or maintain the addiction of Joanne Dierker, Pet. ¶165, as a legal matter the only component of Plaintiffs' defect definition bearing directly upon the physical properties of cigarettes (and thus, for purpose of redhibition, their use and consumption) is nicotine's addictive nature. Once the existence of the alleged redhibitory physical defect is established, proof of the manufacturer's alleged conduct or intent in creating that defect is immaterial, as a plaintiff is not "required to prove the exact or underlying cause [of the product's] malfunction." <u>Rey V. Cuccia</u>, 298 So.2d 840, 843 (La. 1974); <u>see</u> <u>also</u> <u>Young v. Ford Motor Co., Inc.</u>, 595 So.2d 1123, 1126 (La. 1992). Furthermore, "[t]he prescriptive period for a redhibition action begins to run from the date that the defect is manifest, not from the date of discovery of the underlying cause of the defect." <u>Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.</u>, 680 F.Supp. 803, 804-05 (W.D. La. 1987), <u>aff'd</u>, 841 F.2d 394 (5th Cir. 1988)(citations omitted).

Q.      And what I'm trying to determine for myself is at the point in time when you first had a conversation about her cutting down or quitting smoking and she said she tried but she couldn't do it, she was addicted, was that also about the same time that you purchased the patch for her?

A.      Well, she said she felt like she was addicted, you know. And I bought the patches, you know. And we tried both cutting down together and several different options. And nothing ever seemed to work, you know. It was over a long period of time we're talking about, you know, a long period of time, you know. And, you know, that's all I can really say. We tried, you know. And we both tried, you know. We'd cut down for a little while and then gradually it would be right back up.

Q.      And so from the time of about the early 1990s for the next several years, she tried to cut down on her smoking?

A.      Tried, yes, ma'am.

F. Dierker Dep. Tr., Ex. B, at 43:3-24. Ms. Dierker's use of the nicotine patch dates back at least five years and perhaps as long as ten years prior to the filing of this lawsuit. See id. at 30:5-25.

Ms. Dierker was unquestionably aware that cigarettes contain nicotine and that every cigarette package she purchased bore a warning concerning the health risks associated with smoking. See id. at 49:5-7 and 61:21-25. Mr. Dierker testified that Ms. Dierker was advised by her doctor, Dr. Brammer, to quit smoking at least two years before she was diagnosed with cancer in January, 1999. See id. at 83:12-25. Ms. Dierker's medical records corroborate that she was diagnosed as a "tobacco abuser" on November 15, 1996. See Nov.15, 1996 Progress Note from IMG Healthcare Network Record, attached hereto as Exhibit C.

Mr. Dierker also testified that Ms. Dierker told her children that she was addicted to cigarettes and advised them not to smoke:

Q.      Did you discuss that together with your sons? In other words, were the two of you together discussing that with your sons that they should not smoke?

A.  At some point, probably.  At some point, yes, ma'am.

Q.  Did you ever hear your children ask your wife to quit smoking or to tell her that smoking was bad for her?  Did you ever hear either of your sons --

A.  No.

Q.  -- do that?

A.  No.  We actually told them during the conversations that, you know, we thought it was bad for your health and how we couldn't quit and how she was addicted. . . .

F. Dierker Dep. Tr., Ex. B, at 66:10 - 67:4.

Plaintiff Ferdinand Dierker's own testimony establishes that Joanne Dierker was not only aware of her addiction to cigarettes, she was unquestionably aware <u>by the early 1990's</u> of the very redhibitory defect of which Plaintiffs now complain.  Plaintiffs' post-1995 claim pursuant to La. Civ. Code art. 2534 therefore prescribed long ago.

The facts in this case are remarkably parallel to those of the <u>Virginia Scott</u> smoking and health case mentioned above.  In <u>Virginia Scott</u>, plaintiffs had claimed a redhibitory defect identical to that asserted in this case. As in this case, limited discovery, including the depositions of the surviving family member plaintiffs, revealed that the decedent had known of and acknowledged her addiction for years prior to the filing of the lawsuit.  <u>See</u> <u>Virginia Scott</u> Order, Ex. A, at 5-7.   Judge Clement concluded that, given the evidence establishing the decedent's knowledge of her addiction,  <u>all</u> of the plaintiffs' redhibition claims against the Louisiana Defendants had prescribed prior to the filing of the claim. <u>Id.</u> at 7, 9.  The undisputed deposition testimony in this case begs the same result.

Although none is needed, there is further evidence that Ms. Dierker's redhibition claim is prescribed, this time on the face of Plaintiffs' Petition.  According to Plaintiffs' own Petition, information about the tobacco companies' alleged "manipulation of the nicotine levels in cigarettes with the intent and purpose of creating and sustaining

additions to their cigarettes," had come "to the public's attention" by 1994.[7] Pet. at ¶33. Paragraphs 24 and 34 of the Petition describe the 1994 public hearings conducted before the Congressional subcommittee on Health and the Environment as the subcommittee considered regulating products containing nicotine because of their addictive nature. Paragraph 35 describes the airing of a 1994 episode of the ABC television show, "Day One," which reported that tobacco companies manipulate the nicotine in cigarettes so as to addict smokers. Ultimately, such media reports resulted in the March 29, 1994 filing in New Orleans of a nation-wide class action alleging nicotine manipulation and seeking recovery for addiction, <u>Castano v. The American Tobacco Co.</u> The publicity surrounding these news stories cited in Plaintiffs' Petition was certainly sufficient to create a "call for inquiry" by Ms. Dierker regarding her possible addiction, thereby putting her on notice of her potential claims and triggering prescription. <u>See</u> <u>In re Ford Motor Co. Bronco II Prod. Liab. Litig.</u>, 982 F. Supp. 388, 397 (E.D. La. 1997)(discussing the ability of news publications to create constructive knowledge of alleged product defect).

Joanne Dierker clearly knew of the alleged product defect, (the addictive nature of nicotine), by the early 1990's. The Petition only serves to further support Ms. Dierker's early knowledge of this allegedly "hidden" defect. Given this substantial evidence, Ms. Dierker clearly had "notice as to <u>call for inquiry</u>" for any potential redhibition claim years prior to January, 2000. Consequently, all Plaintiffs' redhibition claims against the Louisiana Defendants brought under La. Civ. Code 2534 and based on Ms. Dierker's

---

7.    Prescription of Plaintiffs' redhibition claims may actually date back to 1988, the year the United States Surgeon General's report on nicotine addiction was published. <u>See</u> <u>Badon v. R.J.R. Nabisco, Inc.</u>, 224 F.3d 382 at n.21 (5th Cir. 2000) ("if 1988 is considered as the time at which the addictive nature of cigarettes became common knowledge, it may be arguable that all plaintiffs' claims prescribed prior to the initial filing of [this suit] in 1994"). The 1988 Surgeon General's Report generated significant publicity and "ought to [have] reasonably put plaintiff on notice . . . sufficient to start the running of prescription." <u>Mistich v. Cordus Mfg. Co.</u>, 607 So. 2d 955, 956 (La. Ct. App. 4th Cir. 1992). Moreover, federally mandated warnings concerning the risks of smoking have been printed on every package of cigarettes Ms. Dierker purchased since 1966.

cigarette purchases are prescribed. Plaintiffs have no possibility of recovery against the Louisiana Defendants for their redhibition claim.

### c.    Plaintiffs' negligence claim, even if viable, is prescribed.

Plaintiffs' Motion to Remand indicates that Plaintiffs intend to assert a negligence claim against the Louisiana Defendants based upon their alleged sale of "a dangerous and addictive drug to a minor child." Pltfs' Mot. to Remand at 3. Because this "negligent sale to a minor" claim is not fully articulated in Plaintiffs' Petition, Defendants are left to assume that the requisite "injury" giving rise to such a claim was Ms. Dierker's "addiction" stemming from her initial use of cigarettes as a minor. Plaintiffs' self-styled "negligent sale to a minor" claim is nothing more than a desperate attempt to manufacture a tort claim against the Louisiana Defendants where none exists.

Plaintiffs' negligence claim against non-manufacturer sellers of tobacco products is barred under Louisiana law by the sealed container doctrine. A seller or supplier may not be held liable in tort with respect to packaged goods that it did not manufacture, design, or alter prior to sale.[8] The Louisiana Defendants are mere vendors of cigarettes who do nothing more than receive cigarettes in sealed containers and resell them in those same containers. See Affidavit of Iona Ball, Ex. D; Affidavit of George J. Groetsch, Jr., Ex. E; Affidavit of W. Gilbert Stroud, Jr., Ex. F, and Affidavit of John F. Schwegmann, Ex. G. Plaintiffs' own Petition acknowledges that the tobacco manufacturers' products reached Joanne Dierker (through distributors and/or retailers) "without substantial change in their condition." Pet. ¶ 160.

---

[8].    See Ferruzzi U.S.A., Inc. v. R.J. Tricon Co., 645 So.2d 685, 688 (La. Ct. App. 1994); Ard v. Kraft, Inc., 540 So.2d 1172, 1177 (La. Ct. App.), writ denied, 543 So.2d 515 (La. 1989) (grocer not liable absent proof it prepared, manufactured, or improperly cared for products). When a product is in a sealed container or package, a vendor is entitled to reasonably rely on the assumption that the product is not defective. See Reeves v. Great Atlantic & Pacific Tea Co., 370 So.2d 202, 209 (La. Ct. App.), writ denied, 371 So.2d 835 and 375 So.2d 568 (La. 1979).

Moreover, to establish liability for this claim, Plaintiffs must establish that Ms. Dierker purchased cigarettes from these particular Louisiana Defendants prior to attaining the age of majority in 1967.[9] Plaintiffs have not come forward with such evidence. There is also no evidence to suggest that the Louisiana Defendants owed a "heightened duty" to the then-minor Joanne Dierker. In fact, during the late 1950s and early 1960s, when Ms. Dierker was a minor, Louisiana law had no statutory prohibition of the sale of tobacco products to, or the purchase of tobacco products by, a person under the age of eighteen in Louisiana.[10]

Even if Plaintiffs' unique "negligent sale to a minor" claim had any validity, it would still be prescribed under Louisiana law, under which negligence claims are subject to a one-year prescriptive period. La. Civ. Code Ann. art. 3492 cmt. (b) (West 2000). Although prescription does not run against minors, barring suspension it would have begun running when Joanne Dierker reached the age of majority in 1967.

### 2. Plaintiffs' Redhibition Claims Are Statutorily Barred By Absence of Warranty under La. Civ. Code art. 2521.

In addition to being prescribed, Plaintiffs' redhibition claims arising from Joanne Dierker's cigarette purchases are statutorily barred by La. Civ. Code art. 2521. Article 2521 dictates that a seller "owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." In this case, Plaintiffs' own testimony and Petition clearly establish that Ms. Dierker knew or should have known of the addictive nature of cigarettes a decade before the filing of Plaintiffs' Petition, thereby negating any

---

[9]     Joanne Dierker was born July 25, 1949. See Pl.'s Resp. Def.'s Interrogatory No. 1, attached as Exhibit H.

[10]    See La. Acts 1942, No. 43, § 1 (repealing prohibition of sale of tobacco cigarettes to minors, La. Acts 1900, No. 98); La. R.S. 14:91.8 (1991)(enacting criminal code provision "Prevention of Youth Access to Tobacco Law").

warranty the Louisiana Defendants might otherwise have owed her for cigarette purchases during those years.

Judge Clement reached this very conclusion in her order denying remand in Virginia Scott. Having determined that the plaintiff knew of the alleged redhibitory defect (defined identically to the defect in this case) at the time of her post-1995 cigarette purchases, the court found "that the plaintiffs' redhibition claims are also barred by art. 2521 of the Louisiana Civil Code . . . ." Virginia Scott Order, Ex. A, at 9. The same result is required in this case.

> 3.    **Plaintiffs' tolling arguments do not apply.**

> > (a)    **The doctrine of contra non valentem cannot save Plaintiffs' claims.**

Plaintiffs argue that their claims against the Louisiana Defendants have not prescribed because the doctrine of contra non valentem applies in this case to toll the running of the prescription period because Ms. Dierker allegedly did not know and could not have reasonably known of her potential causes of action until she discovered her injury (her cancer diagnosis). Supplemental Memorandum at 4-5. Under Louisiana law, the doctrine of contra non valentem prevents the running of prescription in four different factual situations. Richardson v. Penzoil Prod. Co., 896 F.2d 919, 922 (5th Cir. 1990). Plaintiffs apparently seek to rely upon the fourth: when the cause of action is not known or reasonably knowable by the plaintiff. See id. As a judicial exception to the statutory rule of prescription, Louisiana courts strictly construe this doctrine. Eldridge v. Martin Marietta Corp., 207 F.3d 737, 743 (5th Cir. 2000).

As discussed at length in section D.1.b., supra, Ms. Dierker knew of the alleged redhibitory defect by the early 1990s, and therefore knew of her potential claim in redhibition, but failed to file a timely claim. For purposes of her "negligent sale to a minor" claim, the prescriptive period commenced once she reached the age of majority

and knew of the addictive nature of cigarettes -- again, years before this lawsuit was filed. The doctrine of <u>contra non valentem</u>, if it operated at all as to Plaintiffs' claims, ceased to be a factor once Ms. Dierker knew of the addictive nature of cigarettes.[11]

**(b)    The <u>Gloria Scott</u> Class Action Provides No Relief From Prescription.**

Plaintiffs also argue that the <u>Gloria Scott</u> class action and its subsequent certification interrupted the statute of limitations period for the plaintiffs' claims against those defendants. <u>See</u> Supplemental Memorandum at 7. As is the case with their other tolling arguments, Plaintiffs misstate the impact of <u>Gloria Scott</u> on their claims against the Louisiana Defendants.

The filing of a class action cannot revive a <u>previously prescribed</u> claim. Rather, the tolling effect recognized by the Supreme Court and cited by Plaintiffs exists merely to ensure that the <u>existing</u> valid claims of putative class members do not prescribe while the class certification decision is pending. Because the prescriptive period is tolled, a putative class member is spared the trouble and expense of filing suit in order to preserve claims that may ultimately be litigated in the class context.

In this case, however, Joanne Dierker had <u>no claims to preserve</u> when the <u>Gloria Scott</u> class action was filed in May, 1996. Defendants' argument above comprehensively establishes that Plaintiffs' claims against the Louisiana defendants prescribed years prior to the filing of the <u>Gloria Scott</u> class action. Moreover, once Joanne Dierker had knowledge of the alleged redhibitory defect -- 1994 at the latest -- La. Civ. Code art 2521 barred any future claims based upon that alleged defect.

---

11.    Plaintiffs' suggestion that the court look to the decisions in <u>Cooper</u> and <u>Denise Murphy</u> as support for the applicability of the doctrine of <u>contra non valentem</u> is odd, given that neither court ever considered the defendants' affirmative defense of prescription, let alone a tolling argument from plaintiffs. Neither decision even mentions the doctrine of <u>contra non valentem</u>.

Plaintiffs' argument that filing of the <u>Gloria Scott</u> class action and its subsequent certification interrupted the prescriptive period also overlooks a critical paragraph of the very <u>Gloria Scott</u> Judgment they attached as an exhibit to their Supplemental Memorandum. Although that order did certify the <u>Gloria Scott</u> class, it simultaneously denied class certification and granted summary judgment in favor of the in-state defendants, including the very Louisiana defendants against whom Plaintiffs in this case now assert claims. Because the <u>Gloria Scott</u> class action was never certified as to the Louisiana defendants in this case, it cannot interrupt prescription for Plaintiffs' claims against those defendants.[12] Nor could any claims be "reserved" as to these defendants.

### 4.    Plaintiffs' Redhibition Claims Are Preempted by Federal Law.

In addition to being prescribed, Plaintiffs' redhibition claims against the Louisiana Defendants are also preempted by federal law.[13] Regardless of the label applied, Plaintiffs' claims are really based upon an alleged failure by the Louisiana Defendants to warn Joanne Dierker about the addictiveness of cigarettes and as such are preempted by the Federal Cigarette Labeling and Advertising Act ("Labeling Act" or "Act").[14]

> **a.    Any state law damages action that seeks to impose an obligation with respect to the labeling, advertising or promotion of cigarettes is expressly preempted by the Federal Cigarette Labeling and Advertising Act.**

The Federal Cigarette Labeling and Advertising Act represents a "comprehensive Federal program" to ensure that the public is "adequately informed" of the health risks of smoking and that "commerce and the national economy" are protected from the

---

[12]    Even if tolling of Plaintiffs' redhibition and negligence claims had occurred, it would have been for only the limited time period between the filing and the denial of class certification as to the Louisiana defendants -- May 24, 1996 to April 16, 1997, and prescription still would have run by April 16, 1998, more than a year prior to the filing of Plaintiffs' petition on January 4, 2000.

[13]    To the extent Plaintiffs may assert implied warranty claims against the Louisiana Defendants, those claims would also be preempted by the Labeling Act for the reasons cited herein.

[14]    Pub. L. No. 89-92, 79 Stat. 282, codified as amended at 15 U.S.C. §§ 1331-1340.

burdens imposed by "diverse, nonuniform and confusing" restrictions or prohibitions with respect to the labeling, advertising or promotion of cigarettes. 15 U.S.C. §§ 1331, 1334. Although the "adverse health effects of tobacco were well known" when it enacted the Labeling Act, Congress, nonetheless, "stopped well short of ordering a ban." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 138 (2000). Instead, Congress "created a distinct regulatory scheme to address the problem of tobacco and health," reserved "exclusive control over [cigarette Labeling] to itself," and required cigarette manufacturers to make certain disclosures on all cigarette packages, and later all cigarette advertising, about the health risks of smoking. See id. at 138, 149.

Balancing the twin goals of the Act, and in furtherance of its decision to allow the sale of cigarettes and provide a certain degree of protection to the tobacco industry, Congress also expressly preempted state and federal regulation of cigarette labels or advertisements.[15] Four years later, Congress significantly broadened the preemptive scope of the Labeling Act by amending section 5(b) to expressly preempt all state law "requirements or prohibitions" imposed "with respect to the advertising or promotion of any cigarettes."[16] Thus, Congress manifested "its intent that tobacco products remain on the market," by allowing cigarettes to be marketed unhindered by state law constraints or obligations with respect to their labeling, advertising or promotion. FDA, 529 U.S. at 139.

In Cipollone v. Liggett Group, Inc., 505 U.S. 504, 524 (1992), the Supreme Court held that section 5(b) of the Labeling Act expressly preempts state law claims that are

---

[15]    Section five of the Labeling Act provided in part: (a) No statement relating to smoking and health, other than the statement required by section 4 of the Act, shall be required on any cigarette package. (b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

[16]    See Public Health Cigarette Smoking Act of 1969, Pub. L. No. 91-222, § 2, 84 Stat. 87, 88. Section three of this act provided that the amended preemption provision became effective as of July 1, 1969. See id.

based on an alleged failure to disclose to the public sufficient information regarding the health risks of smoking. Observing that "[t]he phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law," the Court rejected the contention that the preemptive scope of the Act was limited to the positive enactments of legislatures or agencies. Id. at 522. Rather, the Court held that the Labeling Act expressly preempts any state law damages action that seeks to impose an obligation with respect to the labeling, advertising or promotion of cigarettes. See id. at 524. The Cipollone Court also rejected the notion that the descriptive label a plaintiff attaches to a particular claim, e.g., "failure to warn," "negligent misrepresentation," "strict liability," or "fraudulent concealment," determines whether the claim is preempted. See id. at 523. Rather, the "central inquiry in each case" is whether the "legal duty" underlying the claim constitutes a: (1) requirement or prohibition, (2) based on smoking and health, (3) imposed under state law, (4) with respect to the labeling, advertising or promotion of cigarettes. See id. at 523-24. As the Cipollone Court observed, however, courts have long recognized that a common law claim is "imposed under state law." Id. at 522. Therefore, a determination as to whether the Labeling Act preempts a state law cause of action turns on whether the claim constitutes a requirement or prohibition with respect to the labeling, advertising or promotion of cigarettes. See id. at 523-25.

Subjecting plaintiff's state law claims to this inquiry, the Court in Cipollone held that a broad array of claims are expressly preempted. The Court essentially held that the Labeling Act preempted any common law claims sounding in failure to warn. See id. at 524. The Court further held that the Act preempted claims of fraudulent concealment, unless they were based on a violation of a regulatory disclosure requirement that did not involve the dissemination of information to the public. See id. at 528. In sum, the

<u>Cipollone</u> Court found preempted each claim that would have imposed a duty to <u>disclose additional information</u> regarding smoking and health to the public. <u>See id.</u> at 524 (holding claims requiring that defendants' post-1969 statements should have included "additional, or more clearly stated, warnings . . . are preempted").

> **b.    Plaintiffs' redhibition claims are preempted.**

Plaintiffs' redhibition claims are based on the simple proposition that a product would never have been purchased had the buyer been informed of the allegedly hidden defect. <u>See</u> La. Civ. Code art. 2475; <u>see also</u> art. 2520 ("it must be supposed that the buyer would not have purchased it, had he known of the vice"). As a result, redhibition claims based on the sale of cigarettes necessarily implicate the adequacy of the federally mandated warnings because there would be no <u>hidden</u> defects if the purchaser had been adequately informed. Indeed, Plaintiffs' allegations in support of their claims illustrate this very point. <u>See, e.g.,</u> Petition ¶ 15 (alleging that the plaintiff would have never smoked cigarettes if she had been informed of the health risks of smoking and addictive nature of nicotine); ¶ 165 (". . . Plaintiff and members of the Class would not have purchased the Defendants' cigarettes had they been informed or warned of the [defect]"); ¶ 169 (same). In short, Plaintiffs' redhibition claims constitute nothing more than a direct challenge to the adequacy and sufficiency of the federally prescribed warnings because they are entirely based upon an alleged failure to adequately inform Ms. Dierker of certain risks allegedly associated with the use of cigarettes. However, "[r]egardless of the label attached to it, a plaintiff's claim based upon an alleged duty of defendants to provide to consumers more information regarding smoking and health than is required

by the Labeling Act is preempted." <u>Lacey v. Lorillard Tobacco Co.</u>, 956 F. Supp. 956, 963 (N.D. Ala 1997).[17]

Furthermore, numerous courts have held that claims similar to the redhibition and breach of implied warranty claims alleged herein are preempted by the Labeling Act. <u>See</u>, <u>e.g.</u>, <u>Perez v. Brown & Williamson Tobacco Co.</u>, 967 F. Supp. 920, 928 (S.D. Tex. 1997) (holding that plaintiffs' breach of implied warranty claim was preempted because it essentially claimed that defendants concealed the health risks of smoking); <u>Kenepp v. American Edwards Labs</u>, 859 F. Supp. 809, 813 (E.D. Pa. 1994) (implied warranty claims preempted by the Labeling Act); <u>DaSilva v. The American Tobacco Co.</u>, 667 N.Y.S.2d 653, 656 (Sup. Ct. N.Y. Co. 1997) ("the Labeling Act preempts any claim by a plaintiff which alleges that a cigarette advertisement or promotion improperly failed to include information other than the specific warning required by the Act.").

Plaintiffs' redhibition claims are essentially claims of failure to warn of the alleged hidden defect or vice. But cigarette smokers have, as a matter of law, been adequately warned of the dangers of cigarettes since 1969. <u>See</u> <u>Medtronic, Inc. v. Lohr</u>, 116 S. Ct. 2240, 2252 n.9 (1996); <u>see also</u> <u>Haines v. Liggett Group, Inc.</u>, No. 84-678, slip op. at 5 (D.N.J. June 18, 1998), attached as Exhibit I , ("Warnings displayed pursuant to the 1969 Act are adequate as a matter of law.")

Louisiana Courts have previously found redhibition claims preempted by statutes similar to the Labeling Act. In <u>Allstate Insurance Co. v. Spectrum Group</u>, 1998 WL 690927 at *1 (E.D. La. October 2, 1998), a closely analogous FIFRA case, the plaintiffs asserted a redhibition claim based on allegations that the manufacturer provided an

---

[17].   <u>See also</u> <u>Allgood v. RJR Reynolds</u>, 80 F.3d 168, 172 (5th Cir. 1996) (holding that claims based on fraudulent concealment or the failure to warn are preempted by federal law); <u>Small v. Lorillard Tobacco Co.</u>, 679 N.Y.S.2d 593, 603 (N.Y. Ct. Ap.1st Dep't 1998) ("many Federal and state courts agree that the [Labeling] Act preempts all claims by consumers that the tobacco companies failed to disclose information to the public beyond what was required by Federal law").

inadequate warning with a water-based pesticide. Granting summary judgment to the defendants, Judge Marcel Livaudais observed that the preemptive effect of FIFRA is indistinguishable from the preemptive effect of the cigarette Labeling Act and held that the redhibition claim was therefore preempted. See id. at *3. In a case involving automobile air bag warnings, Judge Martin L.C. Feldman similarly found redhibition claims against car manufacturers preempted by federal law prescribing air bag warnings. See, In re Air Bag Prod. Liab. Litig., 7 F. Supp. 2d at 798 (E.D. La. 1998)(citing Cipollone). Under Plaintiffs' theory, the only way to avoid redhibition would have been to disclose the defect to the public. But to require that disclosure would have been, in essence, to require an additional warning, and the Cigarette Labeling Act preempts any such requirement.

### III.   CONCLUSION

Evaluating all factual allegations in the light most favorable to the Plaintiffs and applying them to the relevant state law, Defendants have proven that there is absolutely no possibility that the Plaintiffs will be able to maintain a cause of action against the Louisiana Defendants in state court. Plaintiffs' claims against the Louisiana Defendants are preempted under federal law and prescribed under state law. Therefore, this Court must conclude that the Louisiana Defendants have been fraudulently joined, and Plaintiffs' motion to remand should be denied.

Respectfully submitted,

**ADAMS and REESE LLP**

Charles F. Gay, Jr., T.A., #5990
Deborah B. Rouen, #2084
Lara E. White, #23366
4500 One Shell Square

New Orleans, LA 70139
Telephone: (504) 581-3234

*Attorneys for Defendant, Philip Morris Incorporated*

_Dorothy H. Wimberly_
Phillip A. Wittman, (#13625)
Stephen H. Kupperman, T.A., (#7890)
Dorothy H. Wimberly, (#18509)
**STONE, PIGMAN, WALTHER, WITTMANN
& HUTCHINSON, L.L.P.**
546 Carondelet Street
New Orleans, LA 70130

*Attorneys for R.J. Reynolds Tobacco Company*

_Peter J. Rotolo III_
Carmelite M. Bertaut, (3054)
William F. Grace Jr. (#6199)
Peter J. Rotolo III, (#21848)
**CHAFFE, McCALL, PHILLIPS, TOLER &
SARPY, LLP**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300

*Attorneys for Brown & Williamson Tobacco
Corporation*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been sent to all counsel by hand, by telecopier, and / or by placing same in the U.S. Mail, postage pre-paid, this 4th day of September, 2001.

_Lara E. White_
LARA E. WHITE

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED