FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 SEP 12 PM 3:56

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOANNE DIERKER, WIFE OF/AND FERDINAND M. DIERKER, CHRISTOPHER DIERKER AND SEAN DIERKER | * * * | CIVIL ACTION |
| | * | NO. 00-261 |
| VS. | * | |
| R.J. REYNOLDS TOBACCO COMPANY, BROWN & WILLIAMSON TOBACCO CORPORATION, PHILIP MORRIS, INC., QUAGLINO TOBACCO AND CANDY COMPANY, INC., GEORGE W. GROETSCH, INC. and SCHWEGMANN GIANT SUPER MARKETS, INC. | * * * * * * | Section: K

Magistrate: 5 |

\* \* \* \* \* \* \* \*

### PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Plaintiffs submit this reply memorandum in support of our Motion to Remand and respectfully request this court, as four other Federal Judges in similar cases have previously done, to remand this case to state court. In <u>Cooper v. Brown & Williamson Tobacco Corp. et al</u>, No. 00-2539, Judge Berrigan remanded a tobacco case citing federal case law supporting remand. In <u>Denise Murphy, et al. v. R.J. Reynolds Tobacco, et al.</u>, Judge Fallon remanded a similar tobacco case citing federal case law supporting remand. In <u>Newsom v. R.J.Reynolds Tobacco Co.</u>, No. 00-1333, Judge Doherty remanded the case after allowing plaintiff to provide proof of purchases in Louisiana. Judge Doherty found that **"[t]he question of prescription is a fact based inquiry, which is in dispute in this matter, under the onerous standard for fraudulent joinder; this**

**Court will not find defendants were fraudulently joined."** In <u>Martin v. Philip Morris</u>, No. 99-799-B-M3 (M.D. La. 2001), Judge Docia L.Dalby rendered her report recommending that the plaintiffs' motion to remand be granted and that this matter be remanded. Judge Dalby found that "[a] state court could well conclude that, at the very least, redhibition claims based on her approximately last year of purchases were not prescribed at the time of her death." (See Exhibit "A", page 9).

## A. LOUISIANA LAW REQUIRES DAMAGES AND INJURY IN ORDER TO BEGIN THE RUNNING OF PRESCRIPTION

Defendants ask this court to disregard jurisprudence interpreting the Civil Code. The case law is and the courts interpretation of the Civil Code should not be disregarded as suggested by the defendants. <u>Encalade v. Coast Quality Construction Corp.</u>, 722 So.2d 244 (La. App. 5th Cir. 2000), is an important case that addresses the prescription issue in a redhibition case. The plaintiff in <u>Encalade</u> purchased a home on March 15, 1986. The house was settling so on April 2, 1991 plaintiff obtained a slab elevation survey. The survey reported a seven inch differential from the front of the house to the rear. On April 6, 1992 the defendant responded stating it did not know if their was structural failure. Plaintiff hired an engineer and on October 2, 1992, a report was rendered stating the building was structurally functional. Another report was completed on December 13, 1994, showing a 12 inch differential. Suit was filed on February 16, 1995. In <u>Encalade,</u> defendants said plaintiff was aware of the "defect" in 1991 and should have filed a suit then. The court in <u>Encalade</u> cited <u>Beth Israel v. Bartley, Inc.</u>, 579 So.2d 1066, 1072, (La.App. 4th Cir. 1991) and found that knowledge of the defect in 1991 was not enough to trigger the running of prescription because in 1991 the defect did not rise to the level of causing damage

or injury to the plaintiff. It was not until the elevation differential rose to twelve inches that plaintiff was actually damaged and injured.

In an effort to defeat remand in this case, defendants will suggest that redhibition does not require tort based damages. Defendants loosely use the term "tort based damage" as if to imply this is not a tort case so how the court require an injury such as lung cancer. As this Court is fully aware, the Fifth Circuit Court of Appeal in <u>Badon</u> has allowed the plaintiffs to pursue a redhibition claim under a civil code article that has traditional not involved tort based injuries. This should not change the law. Plaintiffs and defendants agree that this court must decide when does the <u>call for inquiry</u> begin in this case to trigger prescription. The plaintiff in this case was not injured until she contracted lung cancer. Her claim began then and suit was timely filed. In <u>Encalade</u> the plaintiff did not have to file suit until the actual defect caused "injury," which was when the elevation differential got to twelve inches. At seven inches the defect was present but it did not cause "damage or injury". This case is analogous to <u>Encalade</u> and should not be dismissed based on prescription. Ms. Dierker filed suit one year from the date of injury.

Plaintiffs' counsel received the <u>Martin</u> finding today in which Judge Dalby relied on the <u>Encalade</u> decision. Judge Dalby found that "defendants thus cannot carry their heavy burden of demonstrating that prescription precludes the possibility that Karen Martin's survivors will be able to recover on the redhibition claims against the in-state distributor defendants." <u>Martin</u> at page 10. The facts of this case are nearly identical to the facts in <u>Martin</u> and the other three cases already remanded.

3

## B. DISPUTED ISSUES OF FACT DO EXIST CONCERNING THE REDHIBITORY DEFECT

Regardless of whether injury is required, a critical issue to address in this remand motion is what is the "defect." Contested issues of fact exist such as whether a "defect" exists, what is the "defect," and whether the "defect" can be determined as a matter of law. Each of these questions must be addressed before the inquiry even turns to the damage aspects.

Defendants suggest that the only "defect" of the cigarette is the addictive qualities. Plaintiffs' petition does focus on the addictive qualities of the cigarette. However, a careful review of plaintiffs' petition will show that paragraph 73 under the redhibition section incorporates all preceding paragraphs of the petition and specifically paragraph 8 which discusses the many toxins and chemicals contained in the cigarette. If plaintiff is allowed to prove to the trier of fact the many defects contained within the cigarette, this case could result in a number of defects that render this product defective under Louisiana redhibition law.

The only possible chance these defendants have to be successful on this issue is to convince this court that addiction is the only "defect" and that plaintiff knew she was addicted in 1980 so the case prescribed. Section A of this memorandum addressed why "damage or injury" is necessary assuming addiction is the "defect." This court must consider that this case involves many other "defects" that the trier of fact will address after a trial on the merits. The fact based inquires concerning prescription are numerous considering the many "defects" that may exist. The knowledge of these "defects" by the plaintiff, whether the seller was in good faith or bad faith, and whether the seller committed fraud are the many issues that concern the issue of prescription.

4

Judge Doherty in <u>Newsom</u> saw through the defendants attempt to restrict the fact based inquiry concerning the "defects" of the cigarette. Addiction is plead as a "defect" and many contested issues of fact surround that inquiry. The toxicity of the cigarette is a very likely "defect" that would give rise to a redhibitory defect. In <u>Newsom</u>, Judge Doherty recognized the fact based inquiry that is necessary before dismissing this cause of action. Judge Dalby in <u>Martin</u> also noted the factual issues present in these cases that makes dismissal inappropriate.

The tobacco defendants will direct this court's attention to the incorrect ruling of Judge Clement in <u>Scott v. R.J. Reynolds</u> where the court refused to allow plaintiff to prove that the defect may be the toxicity of the cigarette. Without any legal basis, Judge Clement ignored paragraphs contained in plaintiffs' Petition that discussed the toxicity of the cigarette and refused to allow plaintiffs to assert that "defect" under redhibition. Had Judge Clement allowed plaintiffs to assert the many "defects" of the cigarette discussed in the Petition For Damages she would have been forced to remand as this is a contested issue of fact. Her decision is erroneous and should be overruled. Additionally, Judge Clement refused to follow <u>Encalade</u> and black letter law which says no suit can be filed until injury or damage is sustained.
Plaintiffs sufficiently plead in the <u>Scott</u> petition and the petition in this case that both the addictive quality **and** the toxicity of the cigarette make the cigarette defective. The trier of fact and not the court without the benefit of a full trail should be required to resolve what the actual "defect" is in this case. (See ¶ 73 of Petition for Damages which incorporates ¶ 8 by reference). Plaintiffs' petition sets forth facts alleging the toxicity of the cigarette and for any court to disregard the pleadings and refuse the trier of fact of an opportunity of finding the "defect" to be the toxicity of the defect is erroneous. Plaintiff incorporated the paragraphs discussing the

5

toxicity of the cigarette under the redhibition section. The toxicity of the cigarette and whether the Louisiana distributors knew of this "defect" and whether the plaintiff knew and when the plaintiff may have known of the "defect" must be determined by the trier of fact after a full trial on the merits. Judge Clement's ruling is based entirely on the only possible "defect" being addiction. Addiction is one of many "defects" of the cigarette. Judge Clement's ruling that prescription began running in the mid-1970's because of addiction without any damage being sustained is wrong. Judge Clement's decision was cited to Judge Doherty and Judge Dalby. Judge Clement's decision was disregarded in those cases and should be disregarded in this case.

Judge Clement disregarded the <u>Encalade</u> decision and did not even cite it in her opinion. The test set forth in <u>Encalade</u> dictates that the prescription period does not begin to run until Ms. Dierker was diagnosed with lung cancer. While she may have become aware of the addictive quality of the cigarettes prior to her diagnosis, that alone is not enough to commence the prescription period. She must become aware of the **damages** caused by the addiction and the toxins before having to file a lawsuit. In January of 1999, she was diagnosed with lung cancer, and this is the earliest point she would have had **constructive knowledge of the defect (the toxicity and the addiction) , its damages (lung cancer), and the causal link between the <u>addiction and the toxicity</u> and lung cancer.** Therefore, by the test set forth in <u>Encalade</u>, the prescription period does not commence at the time she became aware she was addicted to cigarettes, but rather when she was diagnosed with lung cancer. Judge Dalby cited Encalade and its importance to this issue. Contested issues of fact are too numerous to overlook.

As previously noted, this court needs to look no further than the decisions in <u>Cooper v. Brown & Williamson Tobacco Corp. et al</u>, No. 00-2539, where Judge Berrigan remanded a tobacco case citing federal case law supporting remand and in <u>Denise Murphy, et al. v. R.J. Reynolds Tobacco, et al.</u> where Judge Fallon remanded a similar tobacco case. Judge Doherty in <u>Newsom</u> and Judge Dalby in <u>Martin</u> also found that remand is appropriate in these cases. Ms. Dierker had no reason to know she had a cause of action until her diagnosis of lung cancer. The decisions in <u>Cooper</u>, <u>Murphy</u>, <u>Newsom</u>, <u>Martin</u>, <u>Encalade</u> and <u>Richardson</u>, lead to the conclusion that contested issues of fact exist preventing a dismissal of the Louisiana defendants this early in the litigation.

**D.   CONCLUSION**

In summary, plaintiff was a minor when she purchased cigarettes from Louisiana distributors and retailers. The Louisiana distributors and retailers had a duty not to sell a known dangerous and addictive drug to a minor child. They are liable for such acts of negligence. Furthermore, the Fifth Circuit in <u>Badon</u> 236 F.3d at 286 concluded that, "there is arguably a reasonable basis for predicting that plaintiffs might establish redhibition or article 2475 liability against the Louisiana wholesalers under Louisiana law..." Considering this suit was filed within the time periods allowed under Louisiana law, this case should proceed in state court. The Louisiana defendants should not be dismissed as the suit was timely filed.

Plaintiffs respectfully move this Honorable Court to remand this case to state court.

DATED THIS 12ᵗʰ day of September, 2001.

                                      Respectfully submitted,

                                      MURRAY LAW FIRM
                                      STEPHEN B. MURRAY (9858)
                                      PERRY M. NICOSIA (21777)
                                      909 Poydras Street
                                      Suite 2550
                                      New Orleans, LA 70112
                                      Telephone: (504) 525-8100

## CERTIFICATE OF SERVICE

       I hereby certify that a copy of the above and foregoing Supplemental Memorandum in Support of Motion to Remand has been served upon all counsel of record by U. S. mail this 12ᵗʰ day of September, 2001.

                                        PERRY M. NICOSIA

FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.

01 SEP 10 PM 4:06

SIGN_____
by DEPUTY CLERK

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **PRESTON S. MARTIN, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | |
| **PHILIP MORRIS, INC., ET AL.** | **NO. 99-799-B-M3** |

## MAGISTRATE JUDGE'S REPORT

This removed Louisiana tobacco wrongful death and survival action comes before the Court on plaintiffs' motion to remand (rec.doc.no. 6). The controlling issue presented for decision is whether the nondiverse distributor defendants were fraudulently joined to defeat diversity jurisdiction.

### *Factual and Procedural Background*

Consistent with the governing standard of review, the facts are presented in the light most favorable to plaintiffs, with all factual disputes and competing inferences resolved in their favor.

Karen Ferachi Martin told others that she began smoking cigarettes at the age of 12, in approximately 1977. Over the course of the next 21 years, she exhibited signs of a heavy addiction to nicotine. Her husband, Preston Martin, testified that she was smoking "at least a pack or a little bit more a day" when they met, when she was just turning 16. Following her marriage at age 17 and thereafter, she regularly smoked a pack to a pack-and-a-half a day. She could not go without a cigarette, and she made sure that she was never without a pack. If she was down to only two or three cigarettes late at night, she would go out to get another pack to make sure that she would have cigarettes the next morning when she awoke. She would not go for more than "probably about an hour at the



most" without a cigarette during waking hours, and she would have a "cigarette fit" if she did not get a cigarette within that time. *Preston Martin Depo.*, at 9-10,16, 21, 31-35 & 49-50.

Ms. Martin tried to avoid going to places where she could not smoke. She therefore tried to avoid visiting the homes of friends who did not smoke or visiting people in the hospital. She would sneak out to the bathroom during movies so that she could smoke. She smoked during both of her pregnancies, cutting back for the first but not for the second. She smoked despite the knowledge both that her grandfather had died of a smoking-related illness and that her father had stopped smoking because of her grandfather's death. She never tried to quit during the Martins' marriage, stated that she did not think that she could quit even if she tried, and grew angry if her husband said something about her quitting. She did not attempt to quit even after being diagnosed with smoking-induced lung cancer in February 1998. She was not expected to live more than a year or two after that point in any event. *Preston Martin Depo.*, at 24, 39-46, 48-56, 58-66, 75-78 & 82-86.

Ms. Martin smoked all the way through her last hospital stay. She would sneak into the bathroom to smoke a cigarette. She died on September 5, 1998, at the age of 33. *Preston Martin Depo.*, at 94-95.

In the last years of her life, Karen Martin bought cigarettes "just about every day" except when she bought a carton instead of a pack because she was going on a trip. It thus is a fair inference from the record that her last purchase of cigarettes occurred only a matter of days or a week prior to her death, as she was hospitalized "probably about a week" before her death. *Preston Martin Depo.*, at 94-95.

-2-

Within a year of Karen Martin's death, on September 2, 1999, her surviving husband and children filed a petition in state court against numerous defendants. The plaintiffs sued a number of tobacco manufacturer or manufacturer-related defendants (the "Tobacco Companies" or "Manufacturer Defendants"), a retail grocery distributor, and a number of wholesale distributors. All parties were of diverse citizenship except for certain distributors who shared the plaintiffs' Louisiana domicile.

The state court petition asserted a number of claims, including a redhibition claim and a negligence claim based upon the breach of a heightened duty not to facilitate cigarette sales to minors. The plaintiffs' allegations included the following:

1.

. . . . Defendants have denied and concealed the fact that tobacco products were dangerous and toxic and contained a highly addictive drug known as nicotine, and have, without public knowledge, controlled and manipulated the amount of nicotine in their products. They did this for the purpose and intent of creating and sustaining addictions to these products. Karen Ferachi Martin, the wife and mother of the petitioners had used the tobacco products manufactured and distributed by these defendants since the age of twelve. Her exposure to these tobacco products had caused her to sustain substantial injuries, including lung cancer which led to her death. . . . .

. . . . .

73.

The Plaintiffs . . . reallege, as if fully set forth, each and every allegation contained in paragraphs 1 through 32, hereof, and further allege:

74.

The Defendants' concealment of nicotine's addictive nature, the Tobacco Companies' manipulation of nicotine

> levels in their cigarettes, and the Tobacco Companies' concealed intent to addict or maintain the addiction of the Decedent constitutes a redhibitory vice or defect in the Defendants' cigarettes, which renders their use and consumption so inconvenient and imperfect that it must be supposed that the Decedent would not have purchased the Defendants' cigarettes had they [sic] been informed or warned of the vice. La. Civ. Code art. 2520.
>
> . . . . .
>
> 77.
>
> In the event it is determined that the Distributors did not know, or reasonably could not have known of the redhibitory vice or defect in the Tobacco Companies' cigarettes at the time the Distributors sold these products, then it is argued in the alternative that the Distributors are liable to the Plaintiffs to return the sale price to the Plaintiffs with interest from the time of sale, and to reimburse the Plaintiffs for the reasonable expenses occasioned by the sale. La. Civ. Code art. 2531.

*Petition*, paras. 1, 73, 74 & 77.

On September 27, 1999, the defendants removed the case to this Court on the basis of diversity. The notice of removal alleged that the distributor defendants were fraudulently joined to defeat diversity because there was no possibility of recovery against them under either Louisiana's product liability law or its redhibition law.

On October 25, 1999, plaintiffs moved to remand for lack of jurisdiction, contending that they had potentially cognizable claims against the distributor defendants. Extensive briefing by all parties followed concerning the issue of whether a cause of action arose under Louisiana law against the distributor defendants on the facts presented.

On October 2, 2000, defendant Philip Morris, Inc. moved to stay these proceedings pending the Fifth Circuit's decision in *Badon v. RJR Nabisco, Inc.* regarding whether the

distributor defendants joined in that action were fraudulently joined. The Court granted the stay, and it administratively terminated the case pending a decision in *Badon*.

On December 21, 2000, the Fifth Circuit issued a definitive decision in *Badon*. The Fifth Circuit held that there was at least an arguably reasonable basis for predicting that Louisiana would allow recovery in redhibition against the distributors. *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 (5th Cir. 2000)(*Badon II*).

Plaintiffs filed a supplemental memorandum seeking remand on the basis of *Badon*. Defendants responded that there were additional grounds for remand that had not been presented to the Court previously that had not been addressed in *Badon*. These new grounds included contentions that the claims against the in-state wholesalers were barred, and hence fraudulently joined, because they were prescribed and further because they were preempted under the Federal Cigarette Labeling and Advertising Act.

The Court allowed a period for discovery and supplemental briefing prior to taking up the question of whether these new grounds precluded remand.

In their supplemental memoranda, defendants contend that the plaintiffs' redhibition claims are prescribed because Karen Martin was actually or at least constructively aware of the addictive nature of cigarettes more than a year prior to suit. Defendants maintain that her actual knowledge is demonstrated by statements to her husband reflecting an understanding that she was addicted. Defendants further premise constructive knowledge on various media reports, Congressional hearings, and lawsuits concerning the addictive nature of nicotine in that were in the public domain as early as 1994. Defendants contend that, unlike a tort claim, a cause of action in redhibition accrues and prescription begins to run from discovery of the defect rather than from discovery of damage or injury.

-5-

Defendants further contend that the Federal Cigarette Labeling and Advertising Act preempts plaintiffs' redhibition claim under the Supreme Court's *Cipollone* decision because the redhibition claim ultimately was grounded in a failure to warn theory comparable to that found preempted in that decision.[1]

In response, plaintiffs cite Louisiana redhibition case law suggesting that the date that the claimant has knowledge of the damage or injury sustained is relevant to a determination of whether a redhibition claim is prescribed. Plaintiffs contend, *inter alia*, that questions of fact exist as to when Karen Martin had actual or constructive knowledge of the defect (the addictiveness and toxicity of cigarettes), her damage (lung cancer), and the causal link between the defect and her injury. They maintain that Karen Martin did not learn of her injury and the causal link to the defect until she was diagnosed with cancer in February 1998, that her redhibition claims were viable at the time of her death, and that they filed the survival action within a year of her death as allowed by Louisiana law. They additionally rely upon the doctrine of *contra non valentum*. On the federal preemption defense, plaintiffs maintain that the redhibition claim in this case is more akin to the claims found not to be preempted in *Cippolone* than the failure to warn claims that were found to be preempted.

---

[1] The Court notes that the defendants are not relying on federal preemption as a basis for removal under federal question jurisdiction, which of course would be a meritless position on its face in the absence of complete preemption. Defendants instead are contending that the in-state defendants were fraudulently joined because the defense of federal preemption precludes any possibility of a recovery on the state law claims. The Court assumes, *arguendo*, that fraudulent joinder may be established by the use of a successful federal preemption defense.

The parties' supplemental memoranda also debate the viability of other claims asserted in tort by plaintiffs. In view of the disposition recommended herein on the redhibition claims, the Court does not reach these contentions.

In reply, defendants maintain that the plaintiffs are expanding their theory of defect for the first time to include toxicity as well as addictiveness. They contend that the cases relied upon by plaintiffs do not involve consumer product defects, and they urge that damage was relevant to the date of discovery in those cases because the claimants did not learn of the defect until they learned of the damage.

### *Governing Law*

The Fifth Circuit has outlined the standards and procedures governing the fraudulent joinder inquiry as follows:

> . . . . A party invoking the removal jurisdiction of the federal courts bears a heavy burden. . . . In order successfully to prove that non-diverse defendants have been fraudulently joined in order to defeat diversity, the removing party must demonstrate "that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court."
>
> In reviewing a claim of fraudulent joinder, the district court must evaluate all factual allegations and ambiguities in the controlling state law in favor of the plaintiff. . . . If there is any possibility that the plaintiff has stated a cause of action against any non-diverse defendant, the federal court must conclude that joinder is proper, thereby defeating complete diversity, and the case must be remanded. . . . .
>
> We have consistently held that claims of fraudulent joinder should be resolved by a summary judgment-like procedure whenever possible. Although the district court may "pierce the pleadings" to examine affidavits and other evidentiary material, it should not conduct a full evidentiary hearing on questions of fact, but rather should make a summary determination by resolving all disputed facts in favor of the plaintiff. . . .
>
> Our evaluation of fraudulent joinder claims does not anticipate a judgment on the merits, but merely considers whether there is any possibility that the plaintiff might prevail. "We do not determine whether the plaintiff will actually or even

> probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so." . . . . Mindful of our obligation to exercise diversity jurisdiction only in cases of complete diversity, we will not authorize removal on the basis of fraudulent joinder unless there is no possibility that the plaintiff could state a cause of action against the non-diverse defendants.

*Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751-52 (5th Cir. 1996)(citations and footnotes omitted). As emphasized in *Badon II*, a claim is regarded as fraudulently joined if there is no arguably reasonable basis for predicting that state law would allow recovery under the facts alleged. *Badon II*, 236 F.3d at 286 & n.4. The district court can consider affirmative defenses in determining whether there is a possibility of recovery on a claim. *See Sid Richardson*, 99 F.3d at 753-56.

### Discussion

**Prescription**

The removing defendants have not carried their heavy burden of demonstrating that there is no arguably reasonable basis for predicting that state law would impose liability on the redhibition claims over a prescription defense. This conclusion follows for two reasons.

First, plaintiffs have come forward with Louisiana case authority suggesting that the date of discovery of damage or injury can be relevant to a determination of when a redhibition claim prescribes. *See Encalade v. Coast Quality Construction Corp.*, 772 So.2d 244, 247 (La. App. 5th Cir. 2000), *writ denied*, 782 So.2d 634 (La. 2001). Defendants seek to distinguish this case law because it does not involve a consumer product like tobacco; and they further urge that the authority relies upon tort principles that are not consistent with Article 2534, which refers to when "the defect was discovered." However, defendants' arguments go to the ultimate merit of the plaintiffs' position; the arguments do not establish

-8-

that there is no arguably reasonable basis for predicting that the state courts might rule in plaintiffs' favor on the issue. Ultimately, it remains to be seen how the Louisiana courts will construe "defect" in these cases under Article 2534 and how they will rule on the issue of when a redhibition claim based on the addictive and toxic[2] nature of cigarettes prescribes.

Second, indisputably, a claim for redhibition arising from a given purchase can accrue no earlier than the date the thing sold was purchased. The facts of this case, taken in the light most favorable to plaintiffs, show that Ms. Martin purchased cigarettes daily right up to only a week or less prior to her death. A state court could well conclude that, at the very least, redhibition claims based on her approximately last year of purchases were not prescribed at the time of her death. Redhibition claims based on the allegation that the defectively addictive nature of the product caused her to continue to purchase and use the product right up to her death quite possibly remained viable for at least the approximately year's worth of purchases that preceded her death.[3]

---

[2] Defendants maintain that plaintiffs are trying to expand their claims post-removal when they refer to toxicity because toxicity allegedly did not provide a basis for their claim in the original petition The redhibition allegations expressly incorporate the first paragraph of the petition, however, which expressly references the toxicity of cigarettes. Regardless, however, the manner in which Louisiana prescription principles apply to the plaintiffs' claims remains a matter of substantial debate. The Court further notes that if a chary reading similar to that advocated by defendants were applied to their notice of removal, one might well question whether defendants now were seeking to add new grounds for removal and/or add missing allegations that were not timely set forth in their notice. There is no allegation in the notice of removal that the claims against the in-state distributors were fraudulently joined because the claims were prescribed and/or preempted under federal law. While a notice of removal may be amended under 28 U.S.C. § 1653, new grounds or missing allegations may not be supplied after the thirty day period for removal expires. The Court does not reach this issue, however, in light of the disposition recommended herein.

[3] Of course, as noted in Badon I, an issue arises on the merits in this regard as to the effect of the provision in Article 2521 that "[t]he seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." Badon I further notes, however, that the manner of application of Article 2521 in this type of case remains to be resolved by the Louisiana courts. See 224 F.3d at 396-98. The Fifth Circuit included this subsidiary inquiry in its outline of the issues encompassed within the question certified to the Supreme Court of Louisiana. When the Louisiana high court declined to take up the certified question, the Fifth Circuit then concluded in Badon II that an arguably reasonable basis existed for predicting liability under state law,
(continued...)

-9-

The removing defendants thus cannot carry their heavy burden of demonstrating that prescription precludes the possibility that Karen Martin's survivors will be able to recover on the redhibition claims against the in-state distributor defendants. Under the current state of Louisiana law, a tobacco case such as this one presents difficult issues for resolution by the state courts, given the unusually long periods of time that may elapse between the initial alleged addiction, knowledge of the hazard, and any resulting harm.

### Federal Preemption

Similarly, the removing defendants have not carried their burden of demonstrating that there is no arguably reasonable basis for predicting that the plaintiffs will be able to recover over a federal preemption defense. Under the governing legal standard, the Court must resolve all debatable ambiguities in the law in favor of the plaintiffs. Under current law, the proposition that federal law preempts these particular state law redhibition claims is a highly debatable one. The defendants liken the plaintiffs' redhibition claims to the failure-to-warn claims that a plurality of the Supreme Court concluded were preempted in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 524-25, 112 S.Ct. 2608, 2621-22, 120 L.Ed.2d 407 (1992). The plaintiffs' claims, however, perhaps are as easily compared to the other common law claims that the *Cippolone* plurality found were not preempted, *see*

---

[3](...continued)
implicitly acknowledging that Article 2521 did not necessarily foreclose recovery in all events in this context. Indeed, the nature of the alleged defect in this case makes a rote application of Article 2521 problematic. Plaintiffs are alleging, not without some factual support, that the defectively addictive nature of the product caused Karen Martin's addiction long before her knowledge of that defective nature, at a time when she was a minor. The nature of the alleged defect – addictiveness – is such that the defect causes continued product purchases and use even after the user has become aware of the defect and potential for harm. Application of a "reasonably prudent buyer" standard to absolve the seller of liability in warranty thus becomes problematic when the very nature of the alleged defect in the product distributed by the seller operates to addictively override reasonable prudence and knowledge of potential harm.

-10-

505 U.S. at 525-30, 112 S.Ct. 2622-26; and the civil law redhibition claims in this case arguably constitute a genre of claim not even remotely under consideration in *Cippolone*.[4] For purposes of this jurisdictional inquiry, the Court must give the plaintiffs the benefit of the doubt as to the ultimate outcome of the debate, particularly when five justices of the high court could "only speculate as to the difficulty lower courts will encounter in attempting to implement" *Cippolone*. 505 U.S. at 543-44 & 555, 112 S.Ct. at 2631 & 2637-38.

### RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the plaintiffs' motion to remand (rec.doc.no. 6) be **GRANTED** and that this matter be **REMANDED** pursuant to 28 U.S.C. § 1447(c) to the Twenty-Third Judicial District Court for the Parish of Ascension, State of Louisiana, for lack of jurisdiction over the subject matter.

The Court emphasizes that the holding herein is only that the affirmative defenses interposed by the defendants do not preclude a possibility of recovery on plaintiffs' redhibition claims. Definitive resolution of the parties' claims and defenses will have to occur in the state court, as this Court lacks jurisdiction to resolve the merits of this case due to the absence of complete diversity of citizenship. *Cf. Badon II*, 236 F.3d at 286 (similar caveat).

Baton Rouge, Louisiana, this 10th day of September, 2001.

_____
MAGISTRATE JUDGE DOCIA L. DALBY

---

[4] While a four-justice plurality parsed between the claims in *Cippolone*, finding some preempted and others not, three justices would have found none of the claims preempted and the other two justices would have found all of the claims preempted.

-11-

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **PRESTON S. MARTIN, ET AL.** | CIVIL ACTION |
| VERSUS | |
| **PHILIP MORRIS, INC., ET AL.** | NO. 99-799-B-M3 |

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Baton Rouge, Louisiana, this 10th day of September, 2001.

_____
MAGISTRATE JUDGE DOCIA L. DALBY

DKT. & ENTERED
DATE 9/10/01
NOTICE MAILED TO:
INITIALS
DATE  BY bS

DLD   Goodman
JS    Anselmo
KC    Leasonover
Murray
Gay
Nelson

bS.67